**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

ROBERT THOUSAND,

                         Plaintiff,                9:17-cv-1003 (BKS/TWD)

v.

G. KING; J. MILLER and MICHAEL KIRKPATRICK,

                         Defendants.

---

**Appearances:**

*Plaintiff, pro se*:
Robert Thousand
11-B-0026
Eastern NY Correctional Facility
Box 338
Napanoch, NY 12458

*For Defendants:*
Letitia James
Attorney General of the State of New York
John F. Moore
Assistant Attorney General, of Counsel
The Capitol
Albany, NY 12224

**Hon. Brenda K. Sannes, United States District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I.    INTRODUCTION

Plaintiff pro se Robert Thousand brought this civil rights action against Defendants King, Miller and Kirkpatrick for alleged violations of Plaintiff's constitutional rights under the First, Eighth and Fourteenth Amendments while Plaintiff was incarcerated at the Clinton Correctional Facility. (Dkt. No. 1). On November 20, 2017, following an initial review of the complaint, the

Court ruled that Plaintiff's First Amendment retaliation claims against King, Miller and Kirkpatrick survived, and dismissed Plaintiff's remaining claims without prejudice for failure to state a claim. (Dkt. No. 9). On December 17, 2018, Defendants moved for summary judgment as to all Defendants. (Dkt. No. 51). Plaintiff filed a response in opposition, (Dkt. No. 59), to which Defendants replied, (Dkt. No. 63). This matter was referred to United States Magistrate Judge Therese Wiley Dancks who, on June 21, 2019, issued a Report-Recommendation recommending that Defendants' motion for summary judgment be granted as to Defendants Miller and Kirkpatrick and denied as to Defendant King. (Dkt. No. 65).

Plaintiff submitted a letter to the Court, filed on July 8, 2019, which was docketed as an Objection to the Report-Recommendation. (Dkt. No. 66). Defendants filed a memorandum of law on July 8, 2019, objecting to Magistrate Judge Dancks' recommendation that summary judgment be denied as to Defendant King. (Dkt. No. 67). For the reasons set forth below, the Report-Recommendation is adopted in part and rejected in part.

## II. STANDARD OF REVIEW

This court reviews *de novo* those portions of the Magistrate Judge's findings and recommendations that have been properly preserved with a specific objection. *Petersen v. Astrue*, 2 F. Supp. 3d 223, 228–29 (N.D.N.Y. 2012); 28 U.S.C. § 636(b)(1)(C). "A proper objection is one that identifies the specific portions of the [report-recommendation] that the objector asserts are erroneous and provides a basis for this assertion." *Kruger v. Virgin Atl. Airways, Ltd.*, 976 F. Supp. 2d 290, 296 (E.D.N.Y. 2013) (internal quotation marks omitted). Properly raised objections must be "specific and clearly aimed at particular findings" in the report. *Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009). "[E]ven a pro se party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal . . . ." *Machicote v. Ercole*, No.

2

06-cv-13320, 2011 WL 3809920 at *2, 2011 U.S. Dist. LEXIS 95351, at *4 (S.D.N.Y. Aug. 25, 2011) (citation omitted). Findings and recommendations as to which there was no properly preserved objection are reviewed for clear error. *Id*.

## III. DISCUSSION

In his complaint Plaintiff alleges that he "began to engage in constitutionally protected speech on May 1, 2016," the date he wrote a complaint to Superintendent Michael Kirkpatrick. (Dkt. No. 1, at 8). Plaintiff asserts that Defendant King retaliated against him by filing a false misbehavior report on May 4, 2016, charging Plaintiff with fighting when in fact Plaintiff had nothing to do with an altercation between two other inmates, and that Defendant Miller retaliated against him by finding Plaintiff guilty of that charge following a disciplinary hearing. Plaintiff asserts a supervisory liability claim against Defendant Kirkpatrick. (Dkt. No. 1).

### A. The Report-Recommendation

In the Report-Recommendation, Magistrate Judge Dancks recommended denying Defendant's motion for summary judgment for failure to exhaust administrative remedies. (Dkt. No. 65, at 8–15). Following a review of Plaintiff's First Amendment retaliation claims, Magistrate Judge Dancks recommended granting summary judgment as to Defendants Miller and Kirkpatrick, and denying summary judgment as to Defendant King. (*Id.* at 15–30). With respect to Miller, Magistrate Judge Dancks concluded that Plaintiff failed to raise a triable issue of fact as to a causal connection between the May 1, 2016 letter and Miller's disciplinary ruling. Magistrate Judge Dancks noted that: (1) the only evidence of Miller's knowledge of the May 1, 2016 complaint was Plaintiff's assertion that he mentioned it in an inaudible portion of the transcript from the disciplinary hearing; and (2) Miller's ruling against Plaintiff was, in and of itself, insufficient to support a retaliation claim, particularly in light of the evidence that the ruling was supported by the testimony of Defendant King and his written report, and that Miller

3

made his decision after hearing from Plaintiff and witnesses requested by Plaintiff. *See*, *e.g.*, *Davis v. Rhoomes*, No. 07 Civ. 6592, 2010 U.S. Dist. LEXIS 103562 at *48-50 (S.D.N.Y. July 8, 2010) (granting summary judgment on a First Amendment retaliation claim to a hearing officer who ruled against Plaintiff).

With respect to Defendant King, Magistrate Judge Dancks noted that King denied knowing about any letter complaint before he issued the misbehavior report, and that Defendants claimed "it would have been impossible" for Defendant King to have learned of the May 1, 2016 letter complaint before writing the misbehavior report because the letter complaint was not even received by the superintendent until May 9, 2016, after the misbehavior report had been written. (Dkt. No. 65, at 23). However, Magistrate Judge Dancks relied on alleged comments made by King, while interviewing Plaintiff regarding the altercation in concluding that Plaintiff had raised a material issue of fact as to Defendant King's awareness of the complaint, and thus causation. Specifically, Magistrate Judge Dancks cited to Plaintiff's assertion that prior to preparing the misbehavior report, King told Plaintiff, "I'm gonna [sic] give you one more thing to grieve," and "Fine, let's see you grieve your way out of this one." (Dkt. No. 65, at 23). Magistrate Judge Dancks concluded that King's alleged comments raised a material issue of fact as to King's awareness of the May 1, 2016 letter complaint. (*Id.*, at 25). Since the parties disputed whether Plaintiff committed the conduct underlying the disciplinary charge, there was an issue of fact as to whether King would have acted the same way even in the absence of Plaintiff's protected speech, and Magistrate Judge Dancks recommended denying summary judgment as to King.

B.   **Objections to the Report-Recommendation**

Plaintiff did not raise any objection to the Report-Recommendation in his letter filed on July 8, 2019. (Dkt. No. 66). Instead Plaintiff complained about entirely new conduct by other officers at a different facility—the Eastern New York Correctional Facility, where he is currently

incarcerated. To the extent Plaintiff seeks to pursue an action arising out of that conduct he must file a new complaint.

Defendant King objects to the recommendation denying summary judgment as to him. King argues that the First Amendment retaliation claim should be dismissed as to him because there is no causal connection between Plaintiff's protected speech and the May 4, 2016 misbehavior report. Specifically, King argues that "because the May 1, 2016 letter by Plaintiff was received by Defendant Kirkpatrick's office on May 9, 2016, it would have been impossible for Defendant Kirkpatrick to have made Sgt. King aware of it on or before" the allegedly retaliatory misbehavior report on May 4, 2016. (Dkt. No. 67, at 8).

"To prevail on a First Amendment retaliation claim, an inmate must establish: '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected [conduct] and the adverse action.'" *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014) (quoting *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009) (internal quotation marks omitted)). To establish a causal connection, Plaintiff must show that his protected speech was "a substantial motivating factor" in the Defendant's decision to file a misbehavior report. *Washington v. County of Rockland*, 373 F.3d 310, 321 (2d Cir. 2004). "To do so, plaintiffs must aver some 'tangible proof demonstrating that their protected speech" animated the decision. *Id.* Here, Defendants argue that Plaintiff has failed to raise a triable issue as to causation because he has failed to adduce any evidence that King was aware of the May 1, 2016 letter. (Dkt. No. 67, at 6). *See*, *e.g.*, *Adams v. Rock*, No. 12-cv-1400, 2015 WL 1312738, at *12, 2014 U.S. Dist. LEXIS 183061, at *27, (Dec. 9, 2014) ("Obviously there could be no causal connection between plaintiff's [protected activity] and the misbehavior report if the defendants were not aware of the [protected activity] when they

5

initiated disciplinary charges."), *report-recommendation adopted*, 2015 U.S. Dist. LEXIS 36283 (N.D.N.Y. March 24, 2015); *cf. Papelino v. Albany Coll. of Pharm. of Union Univ.*, 633 F.3d 81, 92 (2d Cir.2011) (noting, in a Title IX retaliation case where the legal entity must have knowledge of the protected activity, that "lack of knowledge on the part of particular agents who carried out the adverse action is evidence of lack of causal connection").

### 1. The May 1, 2016 Letter Complaint and Evidence of Its Receipt

In his May 1, 2016 letter Plaintiff wrote that he is currently "in the courts litigating" "for being assaulted by officers in another facility," and that following a ruling that he had stated "a valid case against state officials," Plaintiff has experienced "more than a coincidental amount" of problems at the Clinton Correctional Facility. (Dkt. No. 51-3, at 10). Plaintiff described a cell light that was out for approximately four months, toilets in his cells that did not flush, and a postage problem with legal mail that he attempted to send on April 18, 2016. (Dkt. No. 51-3, at 10). Plaintiff sent the letter to the Superintendent, four other high-ranking officials at the facility (the first deputy superintendent, three deputy superintendents), as well as officials and agencies outside the facility. (Dkt. No. 51-3, at 13; Dkt. No. 1, ¶ 57).

King was not an addressee of the May 1, 2016 letter. (Dkt. No. 51-7, ¶ 15; Dkt. No. 59, ¶ 15). Nor does the letter does not contain any complaint regarding Defendant King. In fact, in his letter Plaintiff identified King as an official who fixed Plaintiff's toilet problem within a day "with one phone call." (Dkt. No. 51-3, at 10). Plaintiff described how he was "frustrated enough" with his toilet that he stopped "Sergeant King when he was making his rounds through the tailor shop," and that King "made one phone call and by the time [Plaintiff] got back to [his] cell, [his] toilet was working again." (Dkt. No. 51-3, at 10). The Court notes that in general "it is difficult to establish one defendant's retaliation for complaints against another defendant." *Hare v. Hayden*, 09-cv-3135, 2011 WL 1453789, at *4, 2011 U.S. Dist. LEXIS 40683, at *12

6

(S.D.N.Y. Apr. 14, 2011); *Guillory v. Ellis*, No. 9:11-cv-600, 2014 WL 4365274, at *18, 2014 U.S. Dist. LEXIS 121589, at *49 (N.D.N.Y. July 24, 2014) (same), report-recommendation adopted 2014 U.S. Dist. LEXIS 120709 (N.D.N.Y. Aug. 29, 2014); .

Defendants provided evidence that Defendant Superintendent Kirkpatrick received Plaintiff's May 1, 2016 letter on May 9, 2016: this is reflected in a date-stamp on the document. (Dkt. No. 51-7, ¶ 13; Dkt. No. 51-3, at 10).[1] King argues that because the letter was not received by Kirkpatrick's office until May 9, 2016, "it would have been impossible for Defendant Kirkpatrick to have made Sgt. King aware of it on or before May 4, 2016"—the date of the allegedly retaliatory misbehavior report. (*Id.* ¶ 18). Superintendent Kirkpatrick states that did not discuss the May 1, 2016 letter with Sergeant King. (*Id.* ¶ 16). King states that at no time before he issued the misbehavior report on May 4, 2016 was King aware of any complaint letters by Plaintiff, nor of any lawsuits filed or grievances prepared by Plaintiff. (*Id.* ¶ 17). Plaintiff had not filed any grievances at Clinton Correctional Facility before King's misbehavior report. (Dkt. No. 51-7, ¶¶ 8–9; Dkt. No. 59, ¶¶ 8_9). King states that he issued the misbehavior report charging Plaintiff with fighting because inmate Robinson identified the Plaintiff "by name and description as someone who punched and kicked him." (Dkt. No. 51-5, at 2).

In his deposition Plaintiff testified that he put his complaint letter in inner-department mail on May 2, 2016. (Dkt. No. 51-2, at 202). Plaintiff is not aware of any evidence that the letter complaint was received before May 9, 2016. (*Id.* at 200, 202, 204–05). As Magistrate Judge Dancks noted, Plaintiff "has produced no direct evidence to dispute" the alleged "impossibility" that King could have known of the letter; Plaintiff relies on the circumstantial

---

[1] In his affidavit Kirkpatrick further explained that on May 9, 2016—the date he received the letter—he sent a memorandum to Plaintiff acknowledging its receipt and informing Plaintiff that he was forwarding the letter to E.Bell, Deputy Superintendent-Security "for whatever action they deem appropriate," and that "[a]ny further correspondence should be referred to" E.Bell. (Dkt. No. 51-3, at 2, 9).

evidence of statements that King allegedly made while interviewing Plaintiff about the altercation. (Dkt. No. 65, at 23). Plaintiff asserts that these statements "suggest[] that King was aware of the complaint letter dated May 1, 2016." (Dkt. No. 59, ¶ 17).

### 2. King's Alleged Interview of Plaintiff on May 4, 2016

As recounted in the complaint, after the altercation on May 4, 2016 between two inmates who worked with Plaintiff in the tailor shop, Plaintiff was taken to the facility hospital "for an alleged medical evaluation" and interviewed by King. (Dkt. No. 1, at 10–11). King falsely accused Plaintiff of assisting inmate Dubois attack inmate Robinson with a weapon over some drug related activity. (*Id.* at 11). When Plaintiff told King that he never had a drug record, King allegedly said "well you will if you don't start telling me what I want to know." (*Id.*). When Plaintiff said that he had no information, King allegedly said that he would "make sure you sit in E-Block (Long term keeplock) to sit back and think about it." (*Id.*) When Plaintiff told King that he "had no involvement with the alleged altercation and had too much going on to be getting into any form of trouble," King allegedly said "I'm gonna give you one more thing to grieve and have going on if you don't tell me what I want to hear." (*Id.*). Then, when Plaintiff said that he could not help, King responded, "Fine, let's see you grieve your way out of this one." (*Id.*; Dkt. No. 51-2, at 268). Plaintiff had not filed any grievances at Clinton Correctional Facility before this alleged conversation. (Dkt. No. 51-7, ¶¶ 8-9; Dkt. No. 59, ¶¶ 8–9). In his deposition, Plaintiff testified that King's reference to filing a grievance "implied that [King] knew about" the letter complaint. (Dkt. No. 51-2, at 211).[2]

---

[2] Plaintiff asserts that King was aware of Plaintiff's civil lawsuit because Plaintiff had previously complained to King about a mail issue that "may have been retaliation." (Dkt. No. 59-2 at 18-20). Plaintiff testified that about one week before the misbehavior report, Plaintiff asked King to check on legal mail that Plaintiff had attempted to send because "a substantial amount of [Plaintiff's] law work had been missing and [Plaintiff] believe[d] that it may have been retaliation." (*Id.*). According to Plaintiff, King said something to the effect of "watch your back," and "stop complaining like a bitch." (*Id.*, at 20-22). Assuming these facts to be true, they do not establish King's awareness of Plaintiff's civil lawsuit. And Plaintiff's retaliation claim is based upon retaliation for his May 1, 2016 letter complaint

### 3. Analysis

Under Plaintiff's account of the interview, King wrote the misbehavior report not because he had filed a grievance but because Plaintiff failed to tell King "what [he] wanted to hear." (Dkt. No. 1, at 11) ("I'm gonna give you one more thing to grieve and have going on *if you don't tell me what I want to hear*."). King's alleged reference to "one more thing to grieve," followed Plaintiff's alleged comment that he "had too much going on." While Plaintiff had not yet filed any grievances at Clinton Correctional Facility, King was, according to Plaintiff, aware of Plaintiff's complaint about his legal mail. On this record, with the letter complaint date-stamped May 9, 2016, it would be speculative to infer from Plaintiff's allegations that King knew about the letter complaint Plaintiff had mailed two days earlier to the superintendent and other high-ranking officials at the facility. And, in any event, these alleged limited references to a grievance are insufficient to raise a triable issue of fact as to whether Plaintiff's May 1, 2016 complaint about his living conditions at the facility was a substantial motivating factor in King's decision to file a misbehavior report. Having failed to raise a triable issue of fact as to a causal connection, summary judgment must be granted as to Defendant King.

### C. The Remaining Portions of the Report-Recommendation

With respect to Defendant Kirkpatrick, the Court notes that the only surviving claim against him is supervisorial liability for First Amendment retaliation. (*See* Dkt. No. 9 (Order following initial review of the Complaint)). Because there is no underlying constitutional violation, Plaintiff's supervisorial liability claim as to Kirkpatrick also fails. *See Raspardo v.*

---

about conditions at the Clinton Correctional Facility, not retaliation for a lawsuit against other officials at another facility. (*See* Dkt. No. 1, at 8; Dkt. No. 59-1, at 13). To the extent Plaintiff is asserting that King wrote the misbehavior report in retaliation for that lawsuit, Plaintiff has failed to raise a triable issue of fact as to a causal connection.

*Carlone*, 770 F.3d 97, 129 (2d Cir. 2014). The Court has reviewed the remainder of the Report-Recommendation for clear error and found none.

## IV. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Magistrate Judge Dancks' Report-Recommendation (Dkt. No. 65) is **ADOPTED** in part and **REJECTED** in part as described above; and it is further

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 51) is **GRANTED** in its entirety; and it is further

**ORDERED** that the Clerk is directed to close this case; and it is further

**ORDERED** that the Clerk serve a copy of this Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Brenda K. Sannes
U.S. District Judge

Dated: September 4, 2019
Syracuse, New York